IN THE COURT OF CRIMINAL APPEALS

                                   OF TEXAS

 

                                                                              

                                                               NO.
PD-0235-04



 

 

                                                  RUSSELL S. BYRD, Appellant

 

                                                                             v.

 

                                                        THE
STATE OF TEXAS

 



                   ON APPELLANT=S PETITION FOR DISCRETIONARY REVIEW

                                       FROM
THE THIRD COURT OF APPEALS

                                                            DALLAS  COUNTY



 

Hervey,
J., delivered the opinion of the Court in which Keller, PJ., Meyers,
Keasler, Holcomb and Cochran, JJ., joined. Price  and Johnson, JJ., concurred.  Womack, J., not participating. 

 

                                                                  O
P I N I O N 

 

The
issue in this case is whether the admission into evidence at appellant=s murder trial of a co-conspirator=s out-of-court statement was reversible
error.








Appellant
was convicted of murdering the victim by striking him in the head with a
barbell (which was also referred to at trial as a dumbbell).  This occurred early Saturday morning in the
apartment of appellant=s
brother (Randy).  Randy testified at
appellant=s murder
trial that he saw appellant strike the victim with a barbell.  Randy=s
girlfriend (Steward) testified that she came out of the back bedroom of the
apartment and saw appellant and Randy standing near the bleeding victim who was
on the floor.  Steward saw appellant
holding a barbell.  Steward did not see
who struck the victim.  Appellant told a
fellow county jail inmate that he hit the victim with a barbell.  Randy initially told the police and his work
supervisor that he murdered the victim. 
Randy testified at trial that he made these admissions to protect
appellant and Steward.  The evidence also
shows that the victim=s
murder was not a pre-planned act.

The
prosecution also presented evidence that appellant, Randy and Steward conspired
to Ahinder appellant=s
apprehension@[1]
immediately after the murder occurred. 
To carry out this conspiracy, they went to great efforts to clean up the
crime scene and to dispose of the victim=s
body and his car.  Later the same day,
Randy and Steward had a conversation during which Randy stated that they could
not tell anyone about the murder.  Randy
also told Steward that he would take responsibility for the murder if anyone
asked him about it.  Steward testified at
trial to these out-of-court statements by Randy with no objection from
appellant.

Q. [PROSECUTION]:
And was there any discussion about what had happened?

 

A. [STEWARD]: Yes,
ma=am there was.

 

Q. And what was the
discussion about?

 

A. He had went to
sleep.  And when he woke up, he was
saying that we couldn=t
tell nobody.  That if anybody came to him
to ask him about it or whatever, he was going to tell them that he was the one
that did it.

 

Q. That he was the
one that did it?








A. Yes, ma=am.

 

Q. And when he told
you that he was going to be the one to tell that he did it, did he say anything
about protecting you or [appellant]?

 

A. Yes.  He said that he wouldn=t
ever mention my name.

 

Q. What about
[appellant]?

 

A. He didn=t say anything about [appellant].

 

Steward
also testified, over appellant=s
hearsay objection, to another out-of-court statement that Randy made to Steward
during this conversation asking, AWhy
did [appellant] have to hit [the victim]?@

Q. [PROSECUTION]:
Now, Saturday, when [Randy] had come over to your house, your apartment, didByou mentioned that y=all discussed what had happened; is
that correct?

 

A. [STEWARD]: Yes,
ma=am.

 

Q. And what did
Randy tell you regarding who hit [the victim] with the dumbbell?

 

[THE DEFENSE]:
Objection.  Calls for hearsay.

 

[TRIAL COURT]: What
was the timing of this again?

 

[PROSECUTION]:
Saturday.

 

[TRIAL COURT]: What
time are we speaking of?

 

[STEWARD]: Saturday
afternoon.

 

[TRIAL COURT]: Was
this before or after you talked to the police officers?

 

[STEWARD]: Before.

 

[TRIAL COURT]:
Okay.  Your objection is overruled.

 

A. [STEWARD]:
[Randy] said-asked me why did [the victim] just keep doing it and why did
[appellant] have to hit him.








During
closing jury arguments, the prosecution argued that it really did not matter
who struck the victim because the jury could find appellant guilty as a party
if it believed that he Aassisted
in the offense at all.@[2]  Neither party mentioned, during closing jury
arguments, Randy=s
out-of-court statement to Steward rhetorically asking why did appellant have to
hit the victim.

Appellant
claimed on direct appeal that the trial court erroneously admitted this
out-of-court statement.  The Court of
Appeals decided in an unpublished, memorandum opinion that this out-of-court
statement was admissible under the co-conspirator exemption from the hearsay
rule set out in Tex. R. Evid. 801(e)(2)(E) which defines as
nonhearsay Aa[n]
[out-of-court] statement by a co-conspirator of a party during the course of
and in furtherance of the conspiracy.@  See Byrd v. State, No. 03-02-00625-CR
slip op. at 7-8 (Tex.App.BAustin,
January 29, 2004) (memorandum opinion not designated for publication).  The Court of Appeals also decided that any
error in admitting this out-of-court statement was harmless.  See id.  Its opinion states:








Our review of the
record shows that Steward and [Randy] were part of a conspiracy to hinder
appellant=s
apprehension by assisting in disposing of [the victim=s]
body and cleaning up the scene of the crime. [Citations omitted].  The conversation Steward discussed in her
testimony was not Aidle
chatter,@ but
rather a plan that neither would tell anyone about the crime and that [Randy]
would protect Steward and appellant if the subject ever came up.  In the context of the conversation taken as a
whole, the statement Awhy
did [appellant] have to hit him@
could reasonably be characterized as identifying appellant=s role in the crime and therefore made
in furtherance of the conspiracy. 
Therefore, we cannot conclude that the trial court abused its discretion
in admitting the statement implicating appellant.  Even if we were to find that [Randy=s] statement was improperly admitted
through Steward=s
testimony, [Randy] later testified at trial that the appellant hit [the victim]
with a barbell.  Therefore, Steward=s testimony regarding [Randy=s] statement, if admitted in error, was
harmless. [Citation omitted].

Id.

Appellant
sought discretionary review of this decision in a document he entitled ABrief of Petitioner.@ 
In this document, appellant raised two grounds for review, neither of
which challenged the Court of Appeals=
decision that any error in admitting Randy=s
out-of-court statement was harmless. 
This Court granted discretionary review on one ground which claimed that
Randy=s
out-of-court statement was inadmissible under Rule 801(e)(2)(E) because this
out-of-court statement was Aa
statement about events that allegedly transpired before the beginning of the
alleged conspiracy.@  The ground upon which we granted
discretionary review states:

This Court should
grant review of the decision of the Court of Appeals holding the coconspirator=s Aexception@ to the hearsay rule applied to make
admissible an out-of-court statement because the appellate court erroneously
decided an important issue of state law regarding the relationship for purposes
of the exception between a conspiracy to conceal a crime and the preceding
crime when the court extended the exception to a statement about events that
allegedly transpired before the beginning of the alleged conspiracy.

 








Appellant
claims in his brief on discretionary review that Randy=s
out-of-court statement was inadmissible under Rule 801(e)(2)(E) because a
statement about events that occurred before the conspiracy to conceal the crime
is not Ain
furtherance@ of this
conspiracy.[3]  Appellant also claims for the first time in
his brief on discretionary review that admission of Randy=s out-of-court statement harmed him
under the harm analysis for non-constitutional error set out in Tex. R. App. Proc.
44.2(b).[4]








Justice
Blackmun=s
dissenting opinion in Bourjaily v. United States succinctly sets out the
substantive contours of the co-conspirator exemption from the federal hearsay
rule which, in relevant part, is identical to the co-conspirator exemption from
our state hearsay rule.  See Bourjaily
v. United States, 483 U.S. 171, 188-94 (1987) (Blackmun, J., dissenting)
and various authorities cited therein.[5]  The co-conspirator exemption from the hearsay
rule is based on agency principles, Athe
underlying concept being that a conspiracy is a common undertaking where the
conspirators are all agents of each other and where the acts and statements of
one can be attributed to all.@  Id.[6]  This agency rationale is Anot based primarily upon any particular
guarantees of reliability or trustworthiness that [are] intended to ensure the
truthfulness of the admitted statement.@  Id.[7]  The Acourse
and in furtherance of@
requirements nevertheless provide some limited guarantees of trustworthiness
under the rationale that active conspirators have Ano
incentive to misdescribe the actions of their fellow members.@ 
Id.  Co-conspirator
statements can be used against a defendant even though the defendant is not
charged with a conspiracy offense.  See
United States v. DeVillio, 983 F.2d 1185, 1193 (2nd Cir. 1993).[8]








A
worthy beginning point for analyzing whether Randy=s
out-of-court statement was admissible under TRE 801(e)(2)(E) is the Supreme
Court=s
decision in Krulewitch v. United States, 336 U.S. 440 (1949).[9]  Krulewitch involved a Mann Act
prosecution charging a conspiracy to transport a prostitute from New York to
Florida.  See Krulewitch, 336 U.S.
at 441-44.  At trial, the State sought to
introduce through the prostitute witness a co-conspirator=s out-of-court statements to the
prostitute implicating the defendant.  See
id.  The co-conspirator made these
out-of-court statements to the prostitute over a month after the prostitute had
been transported to Florida.  See id.








The
State=s theory
of admissibility was that these out-of-court statements were part of the
charged conspiracy to transport the prostitute from New York to Florida because
they were made in an effort to conceal this charged conspiracy.  See id.  The Supreme Court disagreed and decided that
the out-of-court statements made during an effort to conceal this conspiracy
were inadmissible because the objectives of this conspiracy had been attained
when the statements were made.  See id.;[10]
see also Lutwak v. United States, 344 U.S. 604, 618 (1953) (teaching of Krulewitch
is that declarations of a conspirator do not bind the co-conspirator if made
after the conspiracy has ended);[11]
United States v. Howard, 752 F.2d 220, 230 (6th Cir.), cert.
denied, 472 U.S. 1029 (1985) (Krulewitch decided that declarations
made after a conspiracy has terminated in an attempt to prevent detection are
not statements made in furtherance of the main conspiracy).[12]

Krulewitch
provides no support for appellant=s
claim that Randy=s
out-of-court statement is inadmissible under TRE 801(e)(2)(E) simply because it
was Aa
statement about events [the victim=s
murder] that allegedly transpired before the beginning of the alleged
conspiracy.@[13]  The State is not claiming here that a
conspiracy to conceal the victim=s
murder was part of a charged conspiracy (to murder the victim).








The
issue here, applying Krulewitch, is whether the objectives of the
conspiracy to Ahinder
appellant=s
apprehension@ had been
attained when Randy made the out-of-court statement.   The Supreme Court in Grunewald v. United
States explained that a Avital
distinction must be made between acts of concealment done in furtherance of the
main criminal objectives of the conspiracy, and acts of concealment done
after these central objectives have been attained, for the purpose only of
covering up after the crime.@  See Grunewald v. United States, 353
U.S. 391, 405 (1957).[14]  In Grunewald, 353 U.S. at 405-06, the
Court stated:

By no means does
this mean that acts of concealment can never have significance in furthering a
criminal conspiracy.  But a vital
distinction must be made between acts of concealment done in furtherance of the
main[[15]]
criminal objectives of the conspiracy, and acts of concealment done after these
central objectives have been attained, for the purpose only of covering up
after the crime.  Thus the Government
argues in its brief that Ain
the crime of kidnapping, the acts of conspirators in hiding while waiting for
ransom would clearly be planned acts of concealment which would be in aid of
the conspiracy to kidnap.  So here, there
can be no doubt that * * * all acts of concealment, whether to hide the
identity of the conspirators or the action theretofore taken, were
unquestionably in furtherance of the initial conspiracy * * *.@ 
We do not think the analogy is valid. 
Kidnapers in hiding, waiting for ransom, commit acts of concealment in
furtherance of the objectives of the conspiracy itself, just as repainting a
stolen car would be in furtherance of a conspiracy to steal; in both cases the
successful accomplishment of the crime necessitates concealment.  (Footnote omitted).  More closely analogous to our case would be
conspiring kidnapers who cover their traces after the main conspiracy is
finally endedBi.e.,
after they have abandoned the kidnaped person and then take care to escape
detention.  In the latter case, as here,
the acts of covering up can by themselves indicate nothing more than that the
conspirators do not wish to be apprehendedBa
concomitant, certainly, of every crime since Cain attempted to conceal the
murder of Abel from the Lord.

      








In
this case, the Court of Appeals decided that the conspiracy was much broader
than just a conspiracy to conceal the victim=s
murder.  See Byrd, slip op. at 7.[16]  The Court of Appeals decided that there was a
conspiracy Ato hinder
appellant=s
apprehension.@  See id.[17]  This conspiracy was still ongoing at the time
of the conversation between Randy and Steward very soon after the victim=s murder.  And, Randy=s
out-of-court statements to Steward about taking responsibility for the murder
and protecting Steward advanced the objectives of this conspiracy.








We
decide, however, that Randy=s
other out-of-court statement rhetorically asking why did appellant have to hit
the victim did not advance the objective of the conspiracy Ato hinder appellant=s apprehension.@  See Howard, 752 F.2d at 230 (A[s]ome link must be established between
the attempt to avoid detection and some remaining objective of the conspiracy.  The government must still prove both that a >central aim of the conspiracy . . .
continued in being= and that
the declarations directed at >concealment
. . . were at least partly calculated to further this aim.@);[18]
see also Guidry v. State, 9 S.W.3d 133, 147-48 (Tex.Cr.App. 1999), cert.
denied, 531 U.S. 837 (2000) (co-conspirator=s
statement to third party merely described Awhat
was occurring or what had occurred@
and did not further conspiracy to murder victim for remuneration).  This decision is consistent with the Avery narrow@
exemption from the hearsay rule set out in TRE 801(e)(2)(E)[19]
and Justice Jackson=s
renowned concurring opinion in Krulewitch discussing how expanding
indefinitely the vague crime of conspiracy can constitute Aa serious threat to fairness in our
administration of justice.@  See Krulewitch, 336 U.S. at 445-458
(Jackson, J., concurring).








We
nevertheless agree with the Court of Appeals that the error in admitting Randy=s out-of-court statement was
harmless.  Randy testified at trial
consistently with this out-of-court statement, and he was subject to
cross-examination.  Randy=s out-of-court statement rhetorically
asked why did appellant have to hit the victim, and Randy testified at trial
that he saw appellant strike the victim with the barbell.  Randy=s
out-of-court statement, therefore, was not the only evidence presented at
appellant=s trial
identifying appellant as the one who struck the victim with the barbell.  It is also relevant that the State did not
mention Randy=s
out-of-court statement during closing jury arguments.  Therefore, the error in admitting Randy=s out-of-court statement did not have Aa substantial and injurious effect or
influence in determining the jury=s
verdict.@  See Ford v. State, 73 S.W.3d 923, 925
(Tex.Cr.App. 2002).

The
judgment of the Court of Appeals is affirmed.

 

Hervey, J.

 

 

Delivered: December 14, 2005 

Publish











[1]

See Tex. Pen. Code,
' 38.05 (defining criminal offense of
hindering apprehension or prosecution).





[2]

The prosecution
argued:

 

So, see, even if you
go back into the jury room and you feel that the evidence shows [Randy] did it,
if you believe [appellant] assisted in that offense at all, he is still guilty
under the law of the parties.  And when
you get to the application paragraphs, and you get to the part where you have
to decide whether he=s
guilty, on page 4, you=ll
see where it says, If you believe [appellant] either acting alone or with
another party.

 

So it=s either himself or acting with [Randy]
and [Steward] as a party causing that death.

 

The State would submit to you it=s a reasonable deduction from the
evidence that [appellant] is, in fact, the one that [sic] picked up that
dumbbell. But you can find him guilty as a party or as the primary person who
picked up that weight.





[3]

Appellant argues in his brief on discretionary review A[t]he statement of a coconspirator to a
conspiracy to conceal a crime that was not itself part of the concealment
conspiracy, which statement inculpates a participant in that crime, is not within
the coconspirator=s
rule.  The statement cannot be made >in furtherance= of the conspiracy because the crime
itself was not part of the conspiracy.@  Appellant argues in his reply brief, Awhen a statement is made during the
course of one conspiratorial offense but references only another offense,
already completed, no relevant conspiracy exists pursuant to which the
statement would be in furtherance, and, even though the statement is made
pursuant to an irrelevant conspiracy, that statement is not admissible unless
made >in furtherance= of the conspiracy.@





[4]

Appellant argues
in his brief on discretionary review that admission of Randy=s out-of-court statement affected his
substantial rights under Rule 44.2(b). 
Appellant argues:

 

Contradictory evidence regarding who
committed the killing permeated the trial. 
Steward and Randy implicated [appellant], but Randy confessed orally to
a police detective and to his manager. 
Thus, the hearsay testimony from Steward relating a statement of Randy
that [appellant] committed the offense was highly prejudicial.  A substantial likelihood exists that it was
the a [sic] decisive determinant in the jury=s
decision to convict.  It was the
statement closest to the alleged incident and arose from the casual
conversation of friends, appearing to lend it credibility.  Accordingly, introduction of the testimony
adversely affected Byrd=s
substantial rights, making it reversible error. 





[5]

USCS Federal
Rules of Evidence, Rule 801(d)(2)(E), (Lexis Law Publishing 1998 Volume)
(hereinafter referred to as FRE 801(d)(2)(E)), provides in relevant part:

 

A statement is not
hearsay if [t]he statement is offered against a party and is a statement by a
coconspirator of a party during the course and in furtherance of the
conspiracy.

Texas Rule of
Evidence 801(e)(2)(E) (hereinafter referred to as TRE 801(e)(2)(E)) provides:

 

A statement is not hearsay if [t]he
statement is offered against a party and is a statement by a co-conspirator of
a party during the course and in furtherance of the conspiracy.





[6]

See Deeb v. State, 815 S.W.2d 692, 697-98 (Tex.Cr.App. 1991), cert.
denied, 505 U.S.1223 (1992) (same); see also United States v. Didomenico,
78 F.3d 294, 303-04 (7th Cir.), cert. denied, 519  U.S. 1006 (1996) (criticizing this agency
rationale).





[7]

This apparently is why the co-conspirator exemption from the hearsay rule
is a Avery
narrow@
one.  See Wong Sun v. United States,
371 U.S. 471, 490 (1963).





[8]

See also Advisory Committee Notes to FRE 801(d)(2)(E) (Lexis Law
Publishing 1998 Volume) at 183 (no guarantee of trustworthiness required in the
case of an admission), and at 185 (co-conspirator statements made after
objectives of conspiracy have either failed or been achieved do not meet the Aduring the course and in furtherance of
the conspiracy@
requirements); Commentary to FRE 801(d)(2)(E) (Lexis Law Publishing 1998
Volume) at 196 (co-conspirator statements made in course of and in furtherance
of conspiracy are admitted Anot
because they are reliable, but because the adversary or his agents made themBif a party happens to make an
unreliable statement, it is not up to the Judge to protect him from use of the
statement by the adversary; it is up to the party to try to explain the
statement or to diminish its importance@),
and at 207 (same), and at 211 (rule does not require that a conspiracy be
charged, only that one be shown to have existed).





[9]

Appellant relies on Krulewitch in support of his claim that Randy=s out-of-court statement was not made Ain furtherance@
of a conspiracy to conceal the victim=s
murder.  Appellant also cites Didomenico
(cited in footnote 6) for this proposition. 
Relying on Krulewitch, Didomenico stated that a Aconspiracy, and a conspiracy to conceal
an earlier, completed conspiracy, are two different conspiracies, like two
different firms, and statements made in furtherance of the second, the cover-up
conspiracy, are therefore not admissible in evidence to demonstrate
participation in or the acts of the first conspiracy.@  Didomenico, 78 F.3d at 303-04. 





[10]

In a concurring opinion, Justice Jackson further described the
circumstances under which the out-of-court statements were made, A[t]he conversation was said to have
taken place after the substantive offense was accomplished, after the
defendant, the co-conspirator and the witness had all been arrested, and after
the witness and the other two had a falling out.@  See Krulewitch, 336 U.S. at 455
(Jackson, J., concurring).  





[11]

Recognizing that federal constitutional restrictions Ado not prevent the States from adopting
a different rule which considers concealment of the underlying offense as a
part of the conspiracy,@
some jurisdictions hold that Athe
course of a conspiracy includes subsequent attempts at concealment of the crime
where sufficiently proximate in time to the offense.@  See, e.g., People v. Thomas,
687 N.E.2d 892, 902 (Ill. 1997), cert. denied, 524 U.S. 955 (1998); People
v. Meagher, 388 N.E.2d 801, 803 (Ill App. 3d 1979).





[12]

Decided before the adoption of the federal Rules of Evidence, Krulewitch
applied federal common law rules of evidence, which included a requirement that
the co-conspirator=s
statement be made in furtherance of a charged conspiracy.  See United States v. Ellis, 156 F.3d
493, 497 n.4 (3rd Cir. 1998). 
The current co-conspirator=s
exemption from the state and federal hearsay rules does not require that a
conspiracy be charged.  See id.





[13]

See also People v. White, 460 N.E.2d 802, 810-12 (Ill. App. 4d
1984) (uncharged conspiracy may exist as predicate for admissions and
statements of co-conspirators when these admissions and statements are Afactually intertwined@ with the charged offense).





[14]

See also Howard, 752 F.2d at 229 (conspiracy is deemed to have
ended when the last objective sought is achieved, when all conspirators have
been arrested, or when achievement of the objective has otherwise been rendered
impossible).





[15]

Emphasis in original.





[16]

Appellant claims that the conspiracy in this case was a conspiracy to
conceal the victim=s
murder.  See Footnote 3.  A conspiracy to conceal the victim=s murder would have involved Adisposing of [the victims=] body and cleaning up the crime scene.@ 
See Byrd, slip op. at 7. 
These objectives had been attained when Randy made the out-of-court
statement asking why did appellant have to hit the victim.  See Krulewitch, 336 U.S. at 441-44.





[17]

The State also
argues in its brief:

 

[Randy=s] statement to Steward was made during
the course of and in furtherance of a conspiracy that both [Randy and
appellant] were a part of, and was therefore not hearsay.  (Citation omitted).  At the time [Randy] made the complained-of
statement to Steward, he, Steward, and [appellant] were engaged in a conspiracy
to obstruct justice and conceal [the victim=s]
murder.  Specifically, [Randy] made the
statement after he, Steward, and [appellant] drove [the victim=s] SUV (with [the victim] inside) to
south Dallas, burned the car and [the victim=s]
body, and then returned to [Randy=s]
apartment and attempted to clean up evidence of the murder.  These acts amount to tampering with physical
evidence and hindering prosecution, both criminal offenses.  (Citations omitted).  In addition, as noted by the trial court,
[Randy=s]
statement was made before he or Steward spoke with the police about the murder.

 

In the same
conversation during which [Randy] asked Awhy
did [appellant] have to hit him,@
Steward testified that [Randy] told her they Acouldn=t tell nobody,@
and that Aif
anybody came to him to ask him about it or whatever, he was going to tell them
that he was the one that did it.@  (Record reference omitted).  Accordingly, the record reflects that the
conspiracy to obstruct justice was ongoing at the time [Randy] made the
complained-of statement to Steward.

 

In addition, [Randy=s]
statement to Steward served to identify [appellant=s]
role in the conspiracy to Steward, and was therefore made in furtherance of the
conspiracy.  (Citation omitted).  The record reveals that Steward, although a
co-conspirator, did not actually see [appellant] murder [the victim].  Accordingly, [Randy=s]
statement identified [appellant] as the murderer.





[18]

We note that
this Court=s
decision in Denney v. State upheld the admissibility of evidence similar
to that here.  See Denney v. State,
558 S.W.2d 467, 468-70 (Tex.Cr.App. 1977), cert. denied, 437 U.S. 911
(1978).  In Denney, the trial
court admitted into evidence a co-conspirator=s
out-of-court statements to a third party stating that the co-conspirator and
the defendant had killed an Aold
man@ and that the third party should
dispose of some of the evidence.  See
Denney, 558 S.W.2d at 468.  This
Court stated that, in addition to having to prove that these statements were
made during the course of a conspiracy, the State also had to prove Athat the statements made by the
co-conspirator to a third party outside the presence of the accused were made
in the furtherance of the conspiracy.@  See Denney, 558 S.W.2d at 469.  This Court decided that the co-conspirator=s out-of-court statements to the third
party Awere for
the purpose of disposing of the fruits of the crime and disposing of evidence
that the crime had been committed, all in furtherance of the conspiracy and,
therefore, admissible.@  See id.

Denney, however, was decided before the adoption of the Rules of
Evidence.  In Meador v. State,
this Court explained that cases decided before the adoption of the Rules
of Evidence did not recognize the Ain
furtherance@
requirement at all Aor if
recognized, its interpretation was unsettled.@  See Meador v. State, 812 S.W.2d 330,
333 (Tex.Cr.App. 1991).





[19]

See Wong Sun, 371 U.S. at 490.